UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONICA RICHARDS individually and on behalf of all other similarly situated individuals,<br><br>                       Plaintiff,<br><br>                v.<br><br>ELI LILLY & COMPANY,<br>LILLY USA, LLC,<br><br>                       Defendants. | Case No. 1:23-cv-00242-TWP-MKK |

**ORDER ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND DEFENDANTS' MOTION TO STRIKE**

This matter is before the Court on Plaintiff Monica Richards' ("Richards") Motion for Conditional Certification and Issuance of Notice and Opt-In Form (Filing No. 41). Richards initiated this action individually and on behalf of others similarly situated, against Defendants Eli Lilly & Company and Lilly USA, LLC ("Lilly USA") (collectively "Eli Lilly" or "Defendants"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B) (Filing No. 1). Richards seeks to bring the ADEA claim as a collective action under 29 U.S.C. §§ 216(b), 626(b). Also before the Court is Defendants' Motion to Strike Opt-In and Consent Form (Filing No. 58). For the reasons set forth below, both motions are **granted**.

### I. BACKGROUND

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Aggrieved employees may enforce the ADEA through certain provisions of the Fair

Labor Standards Act of 1938 ("FLSA"), and the ADEA specifically incorporates § 16(b) of the FLSA, 29 U.S.C. § 216(b).  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 67–68 (2000).

Richards is a fifty-three (53) years old woman who has worked for Eli Lilly since August 1, 2016. (Filing No. 1, ¶ 3). She alleges that,

> Since at least 2017, Eli Lilly has been engaged in a companywide effort to shift its personnel focus to Millennials at the detriment of older employees, openly espousing an aggressive strategy of hiring and retaining Millennial employees. As a part of its effort to retain Millennial workers, Eli Lilly has created resource groups for younger employees who it calls "Early Career Professionals" and has systematically favored younger employees by giving them promotions to the exclusion of older employees who are equally or better qualified.

*Id*. ¶ 10. Richards contends that Eli Lilly both knowingly and willfully denied promotions systematically to qualified employees who were older than forty, including herself and all other similarly situated employees, and she alleges Eli Lilly's discriminatory preferences for younger, Millennial employees has been well documented. Id. at *Id*. ¶ 11.

Richards seeks conditional certification of a collective action, which would permit court-authorized notices to be sent to potential opt-in plaintiffs.  Her proposal for her collective action consists of: "All Eli Lilly employees[1] who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022."  (Filing No. 41 at 1.)

Opposing certification, Defendants argue Richards does not demonstrate she is "similarly situated" to other members of the proposed collective because she does not point to another specific employee who qualifies for the proposed collective, nor identify a common policy or plan that impacted such employees (Filing No. 45 at 12).  Defendants further argue the more lenient "modest showing" standard on which Richards relies is not required by statute or Seventh Circuit case law

---

[1] Defendants and the Court understand the sought class to include Lilly USA employees, not just those of Eli Lilly (*see, e.g.*, Filing No. 45 at 7).

2

and that she fails to carry her burden under the more demanding "preponderance of the evidence" standard that Defendants seek to apply. *Id.* at 12, 19–33.

## II. DISCUSSION

Richards alleges Eli Lilly engaged in rampant age discrimination by systematically denying promotions to her and qualified employees who are older than 40, while disproportionately promoting younger employees, in violation of the ADEA. She asks the Court to conditionally certify a collective action. Richards points out, that "[u]nder the ADEA (like the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA")), employees who wish to participate in a collective action challenging age discrimination may do so by affirmatively "opting in" to join the lawsuit." (Filing No. 42 at 3.)

The Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA. *Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022). Richards' motion is styled as a motion for "conditional" collective certification because many courts in this Circuit have traditionally applied an *ad hoc* two-step certification process "in which the first step is merely preliminary." *Fillipo v. Anthem Companies, Inc.*, No. 1:22-cv-926, 2022 WL 18024818, at *1 (S.D. Ind. Dec. 30, 2022) (citing *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021) (describing two-step collective certification)); *see, e.g.*, *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 438 (S.D. Ind. 2012); *Owens v. GLH Cap. Enter., Inc.*, No. 3:16-cv-1109, 2017 WL 2985600, at *1 (S.D. Ill. July 13, 2017) (citing *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases)).

Defendants correctly observe (*see* Filing No. 45 at 24–25) that the two-step process is not statutorily mandated, *see* 29 U.S.C. § 216(b), nor required by the Seventh Circuit. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020). District courts throughout this Circuit, entrusted with "wide discretion" in managing collective actions, *New Albertsons*, 2021 WL

3

4028428 at *2 (quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)), have nevertheless commonly employed the two-step process. *See id.* at *1; *Duan*, 2023 WL 5955911, at *1.

At the first step — the only step relevant here — the plaintiff need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Duan v. MX Pan Inc.*, 2023 WL 5955911, at *1 (S.D. Ind. Aug. 21, 2023) (quoting *New Albertsons*, 2021 WL 4028428 at *1). If the plaintiff meets this standard, the court may conditionally certify the suit as a collective action and allow the plaintiff to send notice of the case to similarly situated employees who may then opt-in as plaintiffs. *Id.*

Importantly, at step one, the court is not required "to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013) (quoting *Severtson v. Phillips Beverage Co.*, 141 F.RD. 276, 278–79 (D. Minn. 1992)). "Therefore, where the parties' evidentiary submissions directly conflict, they will be resolved — for purposes of this order only — in plaintiffs' favor." *Id.* (citing *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011)). In exercising discretion, district courts must "respect judicial neutrality and avoid even the appearance of endorsing the action's merits." *Bigger*, 947 F.3d at 1046.

At the more stringent second step following discovery, the court reevaluates the conditional certification and "determine[s] whether there is sufficient similarity between the named and opt-in plaintiffs." *Duan*, 2023 WL 5955911, at *1. "If there is sufficient similarity, . . . the matter

[may] proceed to trial on a collective basis; if there is not, the court may revoke conditional certification or divide the class into subclasses." *Id*.

Defendants contest the "modest factual showing" standard at this stage and urge the Court to instead apply the "preponderance of the evidence" standard "given the dangers posed by collective actions in exerting undue pressure on defendants to settle." (Filing No. 45 at 26.) Defendants point to the decision in *Bigger* and argue "trial courts must 'shield against abuse of the collective action device' by assessing certification under familiar evidentiary standards." *Id*. at 28 (quoting 947 F.3d at 1050).

*Bigger* addressed, as a matter of first impression, a defendant's opposition to the issuance of notice to individuals who allegedly entered mutual arbitration agreements that waived the right to join any collective action. *See* 947 F.3d at 1047, 1049. The Seventh Circuit held that an overseeing court may authorize notice to such individuals "unless (1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a *preponderance of the evidence* the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id*. at 1047 (emphasis added).

This Court is not persuaded that the *Bigger* decision imposes a "preponderance of the evidence" standard on *any party besides* an "employer seeking to exclude employees from receiving notice" and to demonstrate "the existence of a valid arbitration agreement." *Id*. at 1050. No other decision from this court cites *Bigger* for such a proposition, even in cases involving arbitration agreements and invoking its analytic framework. *See, e.g.*, Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC, 2022 WL 823697, at *2–*3 (S.D. Ind. Mar. 18, 2022).

5

The Court declines Defendants' invitation to apply the Fifth Circuit's framework in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), or the Sixth Circuit's more recently established version in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023) (*see* Filing No. 45 at 28–29). When presented with the issue, other courts throughout the Seventh Circuit have refused to adopt *Swales* and/or *Clark* and have continued to adhere to the two-step approach. *See, e.g.*, *New Albertsons*, 2021 WL 4028428 at *2 (declining to hold that district court's decision to apply two-stage collective certification framework instead of *Swales*, "was patently erroneous or outside the bounds of judicial discretion"); *O'Neil v. Bloomin' Brands Inc.*, 2023 WL 8802826, at *3 n.2 (N.D. Ill. Dec. 19, 2023) (disagreeing with Defendants' claim that *Swales* and *Clark* show the "tide is shifting away from a two-stage approach to certification"); *Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023) (declining invitation to depart from the two-step process), *reconsideration denied*, 2024 WL 218416 (E.D. Wis. Jan. 19, 2024); *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776, 2021 WL 1207564 (N.D. Ind. 2021) ("The FLSA certification two-step remains the dance of this circuit — as least for the time being — and the court adheres to it."). In the absence of a Seventh Circuit case overruling this long-applied approach, the Court finds no reason to depart from it and now turns to the issue of whether the potential plaintiffs are "similarly situated" for purposes of conditionally certifying the collective action.

**A.      Richards' Evidentiary Support**

To support her allegations that Defendants systematically denied promotions to qualified employees who were older than forty and disproportionately promoted younger employees over older workers, Richards submits an affidavit (Filing No. 42-4), as well as those of one former employee Christina Sosa ("Sosa") (Filing No. 42-6), and one current Eli Lilly employee, Herold Oluoch ("Oluoch") Filing No. 42-5), asserting they had similar experiences (*see* Filing No. 42 at

10). She also provides an affidavit of an Eli Lilly executive business manager James Sweeney ("Sweeney") (Filing No. 42-3) and cites to a pair of prior lawsuits brought before this court (*see* Filing No. 42 at 4–6). In the first suit, which has been resolved by consent decree, the Equal Employment Opportunity Commission ("EEOC") alleged that Lilly USA failed to hire applicants aged forty and over for Sales Representative positions from April 2017 through December 2021 (*see EEOC v. Lilly USA, LLC*, No. 1:22-cv-01882 (S.D. Ind. Oct. 10, 2023)). In the second suit, which has been since dismissed with prejudice, Eli Lilly employees brought a class and collective action alleging that Eli Lilly engaged in systematic age discrimination with respect to the hiring practices of Sales Representatives in the Diabetes and Primary Care Business Units (*see Grimes et al. v. Eli Lilly and Co.*, No. 1:21-cv-2367 (S.D. Ind. Oct. 13, 2023)).

1. **Similarly Situated Individuals**

Defendants first point out that Richards fails to identify a single specific employee who is similarly situated to herself (Filing No. 45 at 10). They assert that the former Lilly employee, Sosa, left before the start of the collective period and the current employee, and Oluoch "does not claim that he ever actually *sought and was denied* a promotion." *Id.* at 11 (emphasis in original).

Sosa's affidavit describes a "shift" in treatment in 2020 and her subsequent constructive discharge, which occurred in November 2021 (*see* Filing No. 42-6, ¶¶ 6–10). Upon review, the Court finds that, although the potential collective action class cannot include Sosa, her affidavit supports Richards' underlying argument about Eli Lilly's alleged common policy or plan involving age discrimination. The actions therein — of a younger Eli Lilly employee with lower sales numbers receiving promotion support unoffered to the older employee affiant — are consistent with the complaint and helpfully illustrate circumstances similar to those experienced by Richards.

Defendants' arguments about the current employee, Oluoch, and his unsuccessful promotions are likewise unpersuasive and inappropriate at this step. His affidavit describes five

7

internal promotion slots opened annually to department employees (Filing No. 42-5, ¶ 3). In 2017, Oluoch started noticing "much younger employees . . . being promoted over [him] and at much higher rates." *Id.* ¶ 4. He clearly asserts Eli Lilly "passed [him] over for a promotion in favor of an [Early Career Professional ("ECP")] at least eight times" and that he reported the alleged age discrimination to Human Resources in 2022. *Id.*, ¶¶ 6, 7. The Court finds this to be sufficiently supportive of Richards' theory that Defendants attempted in the relevant time periods to retain Millennial workers "by promoting them over" older counterparts (Filing No. 1, ¶ 1), who were "passed over for promotion." *Id.*, ¶ 23.

Although Defendants make their own substantial allegations (supported by exhibits and declarations), including that Oluoch "did not apply to any open job postings" from February 12, 2022, onward (Filing No. 45-8, ¶ 8), at this initial notice stage of the proceedings, the Court does "not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Prater v. All. Coal, LLC*, 2022 WL 22285581, at *2 (S.D. Ind. Mar. 22, 2022) (quoting *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (St. Eve, J.)). Reliance on defendant declarations is largely misplaced when the court analyzes certification under step one. *See Briggs v. PNC Fin. Servs. Grp.*, 2016 WL 1043429, at *6 (N.D. Ill Mar. 16, 2016) (defendant's declarations "are futile in the Court's step one analysis"); *Salmans v. Byron Udell & Assocs.*, 2013 WL 707992, at *4 (N. D Ill. Feb. 26, 2013) ("[W]hether … discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification.") (citation omitted). Challenging the factual merits of the collective action in such a manner is properly addressed at the second certification step, when Defendants' opportunity to decertify the collective action will occur.

8

Defendants nevertheless maintains Richards' evidence regarding similarly situated individuals is conclusory and speculative. While ultimately the evidence may show this to be true, it is sufficient at this step that Richards merely shows "some factual nexus" that connects her to "other potential plaintiffs" as "victims of an unlawful practice." *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013). The Court finds Richards has succeeded in doing so.

Throughout her motion and reply, Richards draws heavily upon the expertise of Eli Lilly executive business manager, Sweeney, who, for the preceding twenty-two years, has assisted in the hiring, recruitment, and development of sales team members and attended numerous executive level recruitment and hiring meetings (*e.g.*, Filing No. 42 at 6–8; Filing No. 49 at 17–18; *see also* Filing No. 42-3, ¶ 1). Sweeney's detailed affidavit provides the necessary "factual nexus" connecting Richards to other potential plaintiffs.

Being "very familiar with Eli Lilly's recruitment *and promotion* practices," Sweeney described a company departure from strict promotion requirements in favor of an "early identified talent" pilot program, which allowed managers "to bypass the competency model and promote new employees with minimal or no experience" (Filing No. 42-3, ¶¶ 1–3) (emphasis added). This departure started in or around 2012 and "gained momentum" over the next few years. *Id.*, ¶ 3.

He explained biannual human resource planning meetings and that he witnessed how senior Eli Lilly employees with hiring and promotional authority would "discredit and undermine" the work of older employees being considered for promotions. *Id.*, ¶ 10. Older employees he supervised "often were singled out for criticism," even when he could attest to their excellent performance, but younger and newer sales representatives "who [we]re not ready for promotions" were often promoted. *Id.*

Sweeney's affidavit provides the specific example of a salesperson in their fifties whom he personally supervised. Although the salesperson's identity is left undisclosed, the affidavit details what happened when Sweeney recommended him for a stock grant, which is often considered a "precursor[] to promotion[]." *Id.* One Sales Director (who subsequently became an Associate Vice President) shot down the recommendation, called the salesperson lazy, and represented "he had not performed to his maximum potential" "without having any firsthand knowledge about his performance or work." *Id.* The director never observed him work nor cited any specific metrics in this evaluation.

From this context, Sweeney indicates he is aware of at least twenty employees over the age of forty "who are qualified for more senior sales representative roles, have expressed interest in being promoted, and have not been promoted." *Id.* at 6. Given the totality of Richards' other proffered evidence, including the sweeping picture painted by Sweeney's statements, it would be at least reasonable to infer that these twenty individuals, personally known to him, suffered the same or similar plight ("similarly situated") as Richards, Sosa, Oluoch, or the salesperson Sweeney supervised. That is to say, some plan, policy or instruction linked Millennial employees to promotions that these twenty or so older, more qualified individuals had "expressed interest" in and, as an ultimate result, they were "not . . . promoted." *Id.* at 6. Adjudging the accompanying theories and specifics of *how* that happened (or did not happen) is more proper at the second decertification step. As noted earlier, the Court need not determine at this step whether, in practice, the common plan, policy, or instruction played out over "perfunctory interview[s]" (Filing No. 42-4 at 4), like in Richards' case, or unsubstantiated negative exchanges dissecting older employees' performance, like in the salesperson's case. This occurs at the more stringent second step. *See Duan*, 2023 WL 5955911, at *1.

10

### 2.     Common Policy or Plan Impacting Such Individuals

Defendants next argue that Richards identifies no evidence regarding a common or single plan of discriminatory promotions (Filing No. 45 at 16). They maintain that Eli Lilly's organizational structure and discretionary policies used in evaluating employees for promotion, and Richards' supporting affidavits do not establish a common thread linking the broad collective.

Defendants argue that Richards attempts "to identify such a common plan by discussing the ECP initiative" and does not provide any specific facts to the contrary. *Id.* In discussing "the ECP initiative", Defendants provide evidence in the form of a declaration by an Eli Lilly senior vice president, Matthew "Kip" Chase. *See id.* (discussing Filing No. 45-1). The exhibits attached to the declaration include an internal website page describing job paths and job levels (Filing No. 45-2), an excerpt of an April 2017 "People Strategy" presentation used during the 2017 town hall meeting referenced in the collective action complaint (Filing No. 45-5), and a corresponding "Pre-Read" distributed in advance of the meeting to human resources personnel (Filing No. 45-6). In essence, Defendants argue that the 2017 ECP initiative mentioned in the complaint could not have served as the common plan, since it "was focused on hiring and advancement for entry-level positions, not manager-level positions" like Richards' (Filing No. 45 at 16; *see also* Filing No. 45-1, ¶¶ 22, 24), and had its last hiring goal set in fiscal year 2020 (Filing No. 45 at 16–17; *see also* Filing No. 45-1, ¶ 25).

Ignoring for a moment the fact that the Court does not make merits determinations, weigh evidence, or specifically consider opposing evidence at this stage, *Prater*, 2022 WL 22285581, at *2, the Court finds that this evidence, introduced by Defendants, seems to imply that the April 2017 presentation, and associated ECP *hiring* initiative which ensued, constitutes — full stop — the entirety of the alleged "companywide age bias" that Richards seeks to put forth in this proposed collective. But Richards does not pursue such a limited collective action.

Rather, in the Complaint itself, as well as in the motion and reply, Richards makes substantial allegations, supported by detailed affidavits, that putative class members were together victims of a policy or plan that "extended *beyond* the discriminatory hiring practices detailed in the *EEOC* and *Grimes* lawsuits." (Filing No. 1 at 4) (emphasis added). For example, Sweeney describes learning that a certain Sales Director (the same one involved in the previous salesperson incident) "was following a directive from senior Elil Lilly leadership, including [the] CEO . . . and Senior Vice President of Human Resources and Diversity . . . , to hire *and promote* Early Career Professionals." (Filing No. 42-3 at 4) (emphasis added). He continues: "[P]romoting Early Career Professionals even became part of our performance planning objectives." *Id.* Sweeney straightforwardly assesses that, despite "claim[ing] to have a standardized hiring and promotion process," "the company ignores this process when it comes to both hiring and promoting Early Career Professionals, who are advanced quickly through the promotion process" "at the expense of more qualified and older employees." *Id.* at 6.

Richards recounts her own experience and understanding of such policy or plan working for Eli Lilly in Boston, Massachusetts. Among other things, she describes how an individual "in her late 20s" was promoted to the district sales manager position instead of her and was "hired as an S1 or S2 and … promoted to an S6 in just six years" (Filing No. 42-4 at 4, 5). These "rapid promotions deviate sharply from Eli Lilly's professed Human Resource Planning Process and 'competency model' of promotion, which provides that it takes around three years at each 'S' level before being promoted to the next 'S' level . . . ." *Id.* at 5. Finally, as discussed previously, Richards' allegations are supported by affidavits of other individuals — one working in Indianapolis, Indiana and one that worked previously in Florida — that detail individual circumstances similar to those experienced by Richards. These showings together are sufficient

12

to demonstrate the existence of a "factual nexus" connecting "victims of an unlawful practice." *Berndt*, 2013 WL 3287599, at *6.

The Court is not dissuaded by Defendants' insistence that Richards', Oluoch's, and Sosa's circumstances are individualized occurrences. This would be to miss the forest for the trees. Instead of undermining Richards' claim, the differences to which Defendants point (geographic area, supervisors, and promotion evaluators) are details whose widespread variety might support the allegations of an overarching — *i.e.*, "companywide" ([Filing No. 1 at 3](Filing No. 1 at 3)) — plan, threading together instances of age bias in promotion.

Defendants' arguments concerning the complexity of Eli Lilly's organizational structure and the variance in discretionary policies used in evaluating employees for promotion are likewise unavailing at this step. Richards alleges a common policy or plan of willfully promoting younger, less qualified employees over older, more qualified employees. It is therefore the disadvantaged employees' age, qualifications with regard to the relevant promotion, and status of being passed over in favor of a younger and less qualified counterpart — and not *per se* their job functions, or core business unit to which they belong, or the hiring criteria applied to the sought-after position — that bind the proposed collective of employees. While Defendants may disagree as to the relevance of the alleged variation in Eli Lilly hierarchy, the Court may not engage in making merit determinations or weighing evidence at this stage, and therefore does not find the potential differences between collective members to be disqualifying for purposes of authorizing notice. *See Prater*, 2022 WL 22285581, at *2–3. Should further discovery reveal that some or all potential plaintiffs are not in fact similarly situated or subject to a single common plan of discriminatory promotions, then decertification may be appropriate.

All told, Richards has made a "modest factual showing" that she and potential plaintiffs "together were victims of a common policy or plan that violated the law." *In re New Albertsons, Inc.*, 2021 WL 4028428, at *1. Therefore, the Court conditionally certifies this action.

**B.    Proposed Notice**

After conditionally certifying a collective action, the court may, at its discretion, authorize notice to similarly situated employees. *Horta v. Indy Transp., Inc.*, No. 1:20-cv-02659, 2021 WL 1667078, at *3 (S.D. Ind. Apr. 28, 2021). In doing so, the court maintains a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Jirak*, 566 F. Supp. 2d at 850 (quoting *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989)).

Richards seeks leave to send the Notice and Opt-In Consent Forms by text, e-mail, and U.S. Mail (*see* Filing No. 42 at 22). She also seeks a ninety-day opt-in period with a mail and email reminder sent within forty-five days of the first notice. *See id.* at 22–23. To accomplish this notice plan, Richards asks the Court to require Defendants to produce, within ten days from the date of the order, a collective list for "all former and current Eli Lilly employees[] who have worked for any period of time since February 12, 2022, to the present" (*see* Filing No. 41) to Richards' counsel.

Casting the net as wide as requested ("all former and current" employees) fails to preserve Eli Lilly's privacy interests by requiring Defendants to relinquish the information of employees who are ineligible to become opt-in plaintiffs. To match the certified collective more properly, the Court limits the requested information that Eli Lilly is mandated to turn over to Richards to "all former and current Eli Lilly employees who have worked for any period of time since February 12, 2022, to the present *and were forty years of age or older when they were denied promotion*."

Defendants further seek modifications to the notice and consent forms and have submitted redline versions of each. Specifically, Defendants argue the forms should: (1) define the collective

14

and use congruent criteria to describe opt-in plaintiffs; (2) explain Eli Lilly can seek decertification, which may result in the dismissal, and that opt-in plaintiffs are thus only potentially members of any ultimate collective; (3) reference Richards' claims and Eli Lilly's defenses in a more prominent paragraph disclaiming that the case is at an early stage; (4) advise potential opt-ins that they may be required not only to provide evidence, but respond to discovery and testify at trial; (5) inform potential opt-ins that they may share in liability for Eli Lilly's costs if Eli Lilly prevails; and (6) inform potential opt-ins that they may contact Richards' counsel or an attorney of their choice (Filing No. 45 at 32–33).

The Court agrees with some, but not all, of Defendants' proposed modifications. First, Richards does not object specifically to Defendants' request that the forms define the collective and use congruent criteria to describe opt-in plaintiffs. Without modification, the notice form in particular would appear to apply to *any* employees over the age of forty considered for a promotion, regardless of whether they were denied, or unqualified for, those same promotions. Since the certified collective consists by its own terms of those employees over forty who were *denied* promotions *for which they were qualified*, Defendants' modifications to the forms are **granted** to the extent that they incorporate the missing necessary elements. Considering these changes, the sentence in the notice now reads in relevant part: "According to the company's records, you were forty (40) years of age or older and were denied a promotion for which you were qualified on or after February 12, 2022, and are therefore eligible to . . . ."

C.     **Defendants Motion to Strike Opt-In and Consent Form**

Even with Defendants' proposed modification, the language in the consent form does not match the collective's breadth. After briefing the motion for conditional certification, Richards filed a "notice of consent to opt-in" to the claims in the case (*see* Filing No. 56; Filing No. 56-1), which is the subject of Defendants' Motion to Strike. In relevant part, the consent, signed by affiant

Sweeney, removes the statements that the undersigned "applied for a promotion at Eli Lilly" and Eli Lilly denied the application, both of which were found in the previous consent form (*see* Filing No. 42-2). In lieu of these indications, Sweeney's consent form instead states he was "passed over for a promotion by Eli Lilly in favor of a younger employee in approximately" October 2022 (Filing No. 56-1). The added language, which parallels that found in Oluoch's affidavit, squarely fits within a theory of the case promoted by Richards (*see* Filing No. 1, ¶¶ 1, 23). For such reasons, and taking into account the collective which the Court has certified above, the Court finds that the altered language in Sweeney's consent fulfills 29 U.S.C. § 216(b)'s requirement that any party plaintiff shall "give[] consent in writing to become [] a party."

Considering such observations, as well as the proposed modifications which assist in determining the relevant timeline, the consent form to be sent to opt-in plaintiffs is changed to now read in relevant part:

> On or about _____ (month/date), I applied or was considered for a promotion at Eli Lilly. Eli Lilly denied my application or passed me over for a promotion in favor of a younger employee on _____ (month/date). At the time I applied for the promotion, I was a _____ (title, role, division). At the time my application was denied or I was passed over for promotion, I was _____ years old. The promotion(s) I had applied to/did not receive was to the position(s) of _____ (title(s), role(s), division(s)). I believe I was qualified for the role and was passed over for a less qualified, younger applicant.

In light of these and other changes, the Court **grants** Defendants' Motion to Strike (Filing No. 58), Sweeney's consent form (Filing No. 56-1), but Richards is **granted leave** to file an amended consent form for Sweeney that is consistent with this Entry.

Next, when it comes to Defendants' proposed modification concerning Eli Lilly's possible decertification and effect on opt-in plaintiffs, the Court finds the addition of such an explanation unnecessary. At present, a prominent paragraph indicates that the case "is at an early stage" and there has not been a decision on the merits or settlement (Filing No. 42-1 at 2). Later on, it is further

16

explained that opt-in plaintiffs "will be bound by any ruling or settlement in this case." *Id.* Together, these disclaimers satisfactorily place potential plaintiffs on notice that they will be bound by rulings to come at later stages. The Court finds that spelling out the possibilities or effects therein as stated in the second paragraph of Exhibit 6 is appropriate. (*See* [Filing No. 45-11 at 2](#)).

The Court finds Defendants' request that the proposed notice include language regarding the potential consequences of joining the case and the prospect of participation in discovery and at trial to be a fair suggestion. *See Knox v. Jones Grp.*, 208 F. Supp.3d 954, 966 (S.D. Ind. 2016) ("Plaintiffs' notice . . . is approved with the addition of a phrase that 'a class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial' in the 'What happens if I join the lawsuit?' section."), *on reconsideration in part*, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016); *see also Carrel v. MedPro Grp., Inc.*, 2017 WL 1488359, at *11 (N.D. Ind. Apr. 26, 2017) ("However, the class members may be subject to discovery, including depositions, to determine their individualized damages. Accordingly, revisions to include reference in the Notice to this impeding discovery are warranted.").

Richards should also acknowledge the consequences of an unfavorable result. *See Hayes v. Thor Motor Coach, Inc.*, 502 F. Supp. 3d 1342, 1353, 2020 WL 5217388 (N.D. Ind. 2020). Although § 216(b) is silent regarding the court's authority when the defendant is the prevailing party, at least one circuit court has held that the statute does not prevent prevailing defendants from seeking an award of costs under Federal Rule of Civil Procedure 54(d). *See Lochridge v. Lindsey Mgmt. Co.*, 824 F.3d 780, 782–83 (8th Cir. 2016); *see also E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 883 (7th Cir. 1994) ("Congress must be presumed to know, upon incorporating the FLSA into the ADEA, that in the absence of a specific provision, prevailing defendants would not be able to recover fees absent a showing of bad faith. By explicitly changing

this rule with respect to plaintiffs but remaining silent with respect to defendants, the most sensible reading is that the FLSA and the ADEA adopt the common law rule with respect to prevailing defendants."). It only seems prudent to advise future plaintiffs of their responsibilities and potential consequences if they join, so long as the language does not unfairly dissuade possible plaintiffs from joining. The Court finds that Defendants' proposed language does not run this risk. The forms shall be modified accordingly.

Lastly, Defendants request that the opt-out period should be reduced from Richards' proposed ninety days to sixty days. A period of seventy-five days is a reasonable compromise. The notice shall be modified accordingly. Defendants further argue the Court should not authorize reminder notices, which they contend are unnecessary and "could be interpreted as encouragement by the Court to join the lawsuit" (Filing No. 45 at 33 (quoting *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753–54 (N.D. Ill. 2010)). However, such concerns are uncompelling, given that the second notice will be disseminated by Richards' counsel, not the Court. That aside, since the individual is not part of the collective in an FLSA action unless he or she opts-in, this court has previously recognized a second notice or reminder is appropriate. *See, e.g.*, *Slack v. Xcess, Inc.*, 2020 WL 12738895, at *3 (S.D. Ind. July 9, 2020); *Knox*, 208 F. Supp. 3d at 964–65. The Court therefore authorizes Richards to send a second notice, identical to the first, forty-five days after the issuance of the first notice to all individuals who have not yet opted-in to this matter.

The Court has considered Defendants' remaining objections, as well as the other suggested redlined changes, and overrules them. They are largely stylistic suggestions concerning the language included in the notice or are otherwise unnecessary. The Court will not engage in a wholesale rewrite of Richards' proposed notice form, as collective action plaintiffs should be allowed to use the language of their choice in drafting the communication to other prospective

18

collective members.  *See King v. ITT Continental Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986) (Rovner, J.).

### III. CONCLUSION

Richards has met her step one burden to certify her ADEA claims as a conditional collective action under the FLSA.  Her Motion for Conditional Certification and Issuance of Notice and Opt-In Form ([Filing No. 41](#)) is **GRANTED**. Eli Lilly's Motion to Strike ([Filing No. 58](#)) is **GRANTED,** and **[Filing No. 56-1](#) is stricken**.  Richards is granted leave file a new a consent form for Sweeney that is consistent with this Order.

The notice and opt-in consent forms are limited in accordance with this Order.  Because Richards must revise these forms before they can be sent, the Court **ORDERS** her to **file within fourteen (14) days of the date of this Order supplemental notice and opt-in consent forms**, as well as a **proposed order** granting leave to send them.  Absent any unforeseen issues or unconsidered additions, the Court intends to grant the proposed order and allow notice to proceed.  Thus, new objections by Defendants, if any, are not to exceed three pages and are due **seven (7) days after Richards' submission**.

Additionally, the Court **ORDERS** Defendants **to share the requested contact information with Richards' counsel within twenty-one (21) days of the date of this Order** for all former and current Eli Lilly employees who have worked for any period since February 12, 2022, to the present and were forty years of age or older when they were denied promotion.

**SO ORDERED**.

Date:    3/25/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Harold Lichten
LICHTEN & LISS-RIORDAN
hlichten@llrlaw.com

Jane Farrell
LICHTEN & LISS-RIORDAN PC
jfarrell@llrlaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Matthew Patton
LAW OFFICE OF NICHOLAS F. ORTIZ P.C.
mdp@mass-legal.com

Thomas Fowler
LICHTEN & LISS-RIORDAN, P.C.
tfowler@llrlaw.com

Jacob Wentzel
JENNER & BLOCK LLP
jwentzel@jenner.com

Joanna Wright
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036

Joseph Torres
JENNER & BLOCK LLP
jtorres@jenner.com

Katherine Funderburg
JENNER & BLOCK LLP
kfunderburg@jenner.com